209    349|<br>s216   ²633|

# Packard v. Thiel College, Appellant.

*Corporations—Franchises—Parties—Equity—Act of June 19, 1871, P. L. 1360—College—Location.*

While the Act of June 19, 1871, P. L. 1360, was not intended to permit an inquiry at the instance of a private suitor as to the validity of a charter or as to its forfeiture, it was intended to enlarge and make clear the rights of individuals to inquire into the charter franchises of corporations when asserted to their individual injury.

Where an act for the incorporation of a college provides that the college shall be permanently located as shall hereafter be determined by the trustees, and the trustees have permanently located the college at a particular place, its location cannot be changed without an amendment of its charter. In such a case persons who have contributed funds for the establishment of the college in the place where it was located, have a standing to maintain a suit in equity to prevent its removal.

·Argued May 10, 1904. Appeal, No. 98, Oct. T., 1904, by defendants, from decree of C. P. Mercer Co., Oct. T., 1903, No. 1, on bill in equity in case of John R. Packard and L. L. Keck v. Thiel College of the Evangelical Lutheran Church et al. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity to restrain the removal of Thiel College from Greenville, where it was located in 1872, to Greensburg.

MILLER, P. J., filed an opinion which was in part as follows:

It seems so plain to us that the location of Thiel College is an essential part of its charter that such location cannot be changed without an amendment of the charter that argument in support thereof is unnecessary. Ordinarily the act of incorporation or the charter fixes the corporate location by name, but in the present case the act left the location to be determined by the trustees, the words of the act being: "To ·be permanently located at such place in western Pennsylvania as the trustees hereafter may determine."

Manifestly the act contemplated but one location as made by the trustees, and that this should be the permanent corporate location of the college in the same sense that it would have been if the name of the place to be selected by the trustees had been written in the act itself. No power is given to the trustees to make any temporary location and no power is given to them to make any second location or relocation. The act simply authorized the trustees to make one single permanent location, and this is all they had any authority to do under any circumstances.

The college having been actually located by the trustees at Greenville in the year 1872, a site procured, college buildings erected and the work of the college carried on without interruption for more than thirty years, it seems too plain for argument that the college could not be removed from Greenville, at least without an amendment of its charter.

The only other question to be determined is, have the plaintiffs a legal standing to maintain this suit to prevent the unlawful removal of the college? It is well settled that individ-

ual citizens can maintain suits in equity against corporations
to restrain unlawful acts committed in exercise of corporate
power where such acts are a transgression of private property
or contract rights. If a suitor can show that his private indi-
vidual rights, which are personal to him and which do not
pertain to him as an ordinary citizen in common with others,
are about to be invaded by an unwarranted exercise of power
on the part of the corporation, we are of opinion and so hold
that he has a right to prevent it by the remedy afforded by in-
junction. To hold that the plaintiffs have no standing to main-
tain this suit would be to declare that they never acquired any
rights whatever under their contract for the location of the
college and for which they paid their money. The express
language of the act of June 19, 1871, giving to the courts
power to restrain by injunction unlawful acts of corporations
at the suit of individuals, covers all cases where it is alleged
" that the private rights of individuals are injured or invaded
by a corporation claiming to have a right or franchise to do
the act from which such injury results." Certainly this act is
broad enough in its terms to cover the injury complained of in
this case and include the plaintiffs in the class of persons for
whom these provisions were intended.

### DECREE.

And now, April 4, 1904, the preliminary injunction granted
September 5, 1903, and continued by order of this court on
September 24, 1903, is made perpetual, and it is ordered and
decreed that the defendants, and each and every one of them,
are enjoined and restrained from moving, disposing of or sell-
ing the personal property in and about the buildings situate in
Greenville, and known as " Thiel College," and that they be
perpetually enjoined and restrained from selling, dismanteling,
or committing any act that will injure or lessen the value of
the real estate of Thiel College, and that the defendants, and
each and every one of them, be perpetually enjoined and re-
strained from removing Thiel College from Greenville, Penn-
sylvania, to Greensburg, Pennsylvania, or to any other place.
And it is further ordered and decreed that the defendants
shall pay to plaintiffs their legal costs incurred in this proceed-
ing.

*Error assigned* was the decree of the court.

*W. A. Griffith,* of *Lyon, McKee & Mitchell,* with him *J. Boyd Duff,* for appellants.

*Q. A. Gordon,* with him *E. S. Templeton, W. C. Pettit, H. L. Keck, T. C. Whiteman* and *J. J. Donaldson,* for appellee.

PER CURIAM, May 23, 1904 :

The decree entered in this case is fully sustained by the reasons stated in the opinion of the court. By a special act of incorporation Thiel College was to be permanently located at such place in western Pennsylvania as should thereafter be determined by the trustees. After it had been permanently located by action of the trustees at Greenville, Mercer county, that place became as distinctly its only legal location as though it had been named in the charter. The plaintiffs, having contributed to a fund for the establishment and support of the college, have interests springing from their contract which differ from those of the public at large. While the Act of June 19, 1871, P. L. 1360, was not intended to permit an inquiry at the instance of a private suitor as to the validity of a charter or as to its forfeiture, it " was intended to enlarge and make clear the rights of individuals to inquire into the charter franchises of corporations when asserted to their individual injury :" Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.

The decree is affirmed at the cost of the appellant.